```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

JOHN ROE                                          CIVIL ACTION

VERSUS                                            NO: 07-2908

TANGIPAHOA PARISH SCHOOL                          SECTION: J(5)
BOARD, ET AL
```

**ORDER AND REASONS**

The question before the Court is whether the distribution of Gideon Bibles to elementary school children at Loranger Middle School violated the First Amendment of the United States Constitution, specifically, the Establishment Clause.

Before the Court are cross-motions for summary judgment filed by Plaintiff[1] and Defendants[2] (Rec. Docs. 33 and 34). These motions, which are opposed, were set for hearing on the

---

[1] Plaintiff "John Roe" has filed this suit individually and as next friend to his daughter "Jane Roe."

[2] Defendants are the Tangipahoa Parish School Board, Ann Smith, Robert Potts, Leonard Genco, Al Link, Danny Ridgel, Robert Caves, Eric Dangerfield, Sandra Bailey-Simmons and Rose Dominguez, board members, Louis Joseph, superintendent at the time of the events in question, Tangipahoa Parish School System, and Andre Pellerin, principal of Loranger Middle School. Defendants are sued in both their individual and official capacities.

briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Plaintiff's motion should be granted and Defendants' motion denied.

## Background Facts

On May 9, 2007, the Gideons visited Loranger Middle School, a public school in Tangipahoa Parish, to distribute Bibles to the fifth grade class. Via email, Principal Andre Pellerin notified fifth-grade teachers that the Gideons would be on campus all day distributing Bibles at a location outside of the principal's office and that those students who wanted a Bible could have one. Pellerin also stated in the email to "[p]lease stress to students that they DO NOT have to get a [B]ible" (emphasis in original). In sending the email, Pellerin has testified that he was acting pursuant to instructions from the Tangipahoa Parish School Board ("School Board").

When time came for "Jane Roe's" class to get their Bibles, the students were instructed by their teacher that if they did not want a Bible, they should remain with the sixth-grade class. Jane alleges that she felt pressured to get a Bible because of potential teasing and name-calling by her peers if she refused. As a result, she accepted a Bible, and she, like everyone else receiving a Bible that day, was told by the person from the Gideons, "God bless."

Jane's father, "John Roe," instituted this action after learning that his daughter had been given a Bible while at school.

## Discussion

**A. Applicable Law**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The religion clauses of the First Amendment are made applicable to the States and their school districts by the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 8 (1947) (applying the Establishment Clause to the states); Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (applying the Free Exercise Clause to the states).

The United States Supreme Court has undertaken the analysis of a First Amendment violation with regard to religious material in schools several times. The starting point in the analysis is Lemon v. Kurtzman, 403 U.S. 602 (1971). In Lemon, the Supreme Court laid out a three part test for determining whether state action violates the Establishment and Free Exercise Clauses. For the challenged state act to be constitutional, it must: (1) have a secular legislative purpose; (2) its principal or primary purpose must be one that neither advances nor inhibits religion; and (3) it must not foster excessive government entanglement with religion. Id. at 612. State action violates the Establishment Clause if it fails to satisfy any of these prongs. Edwards v. Aquillard, 482 U.S. 578, 583 (1987).

In Lee v. Weisman, the Supreme Court set forth the "coercion" test, emphasizing that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercises." 505 U.S. 577, 587 (1992) (finding formal prayer at a graduation ceremony to be an obligatory participation in a religious exercise and a violation of the Establishment Clause). The coercion test considers whether the state actor has coerced anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes religion. Id. at 587.

The final test is the "endorsement" test, articulated by the Supreme Court in <u>County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter</u>, 492 U.S. 573 (1989). This tests looks to whether, judged by a reasonable observer, the challenged state practice has the effect of promoting or endorsing religious beliefs. <u>Id.</u> at 601.

**B.   The Parties' Arguments**

Plaintiff argues that the distribution of Bibles at Loranger Middle School violates all three of the applicable constitutional tests set forth in <u>Lee</u>, <u>Lemon</u>, and <u>County of Allegheny</u>.

In opposition, the School Board argues that the distribution of Bibles in schools has been held unconstitutional only in cases where the defendants allowed the children to be subjected to an element of coercion, i.e., where children have been forced to either listen to a religious presentation and/or coerced into taking a Bible. Since there is no element of coercion in the facts of the case at hand, Defendants argue that Plaintiff's constitutional challenge must fail.

**C.   Analysis**

   **1.   Coercion Test**

This test focuses on the coercive effect that the activity in question has on students. The courts have expressed a great deal of concern for "the impressionability of students in elementary [schools] . . . and the pressure they feel from

teachers, administrators, and peers." <u>Jabr v. Rapides Parish Sch. Bd.</u>, 171 F. Supp. 2d 653 (W.D. La. 2001).

Jane Roe states that she accepted the Bible because if she did not, her classmates would have "picked on" her. She feared they would call her "devil worshipper," and that "she don't [sic] believe in God," and that she is a "Goth." Plaintiff goes on to cite several cases in support of the argument that Jane Roe was unconstitutionally coerced into taking a Bible.

In <u>Berger v. Rensselaer Central School Corp.</u>, 982 F.2d 1160 (7th Cir. 1993), Bibles were distributed in the classroom instead of in the hallway outside of the principal's office as in the instant case. Children could have chosen not to accept the Bible as in the instant case, but the court in <u>Berger</u> emphasized that the children were forced to sit through the Gideons' presentation in the classroom. No such presentation occurred here, and as a result, the same level of coercion is not present.

In <u>Jabr</u>, supra, students were lined up single file outside the principal's office, escorted inside, and each child was presented with a copy of a Bible. 171 F. Supp. 2d 653 (W.D. La. 2001). The minor child in that case, upon being presented with the Bible, said "no, thank you," to which the principal responded, "just take it." <u>Id.</u> Feeling pressured, the child accepted the Bible. <u>Id.</u> This amounts to active participation and coercion by the principal which is not present in the instant

6

case.  In fact, Jane Roe was given the option to not even go with her class to get the Bible.

In Peck v. Upshur County Bd. of Educ., school administrators set up a table on school property but outside of the formal classroom setting one day a year, where they placed religious and nonreligious material, and then permitted students simply to walk past the table, and view the offerings without school officials or anyone offering the religious materials present.[3]  155 F.3d 274, 287 (4th Cir. 1988).  The table contained a disclaimer, which renounced any school endorsement.  The Peck court held that "the state does not violate the Establishment Clause when it permits entities to passively offer the Bible or other religious material to secondary school students on a single day during the year pursuant to a policy of allowing private religious and nonreligious speeches in its public schools."[4]  Id. at 288.

---

[3]  In this way, the instant case contains circumstances somewhere between Berger / Jabr and Peck in the sense that in Peck, the tables were not in a classroom or principal's office area as in the instant case, but they were unmanned, which was not the case here.

[4] The court stated further:

> The Board's action does not raise the specter of official coercion because neither the Board nor any other school employee will require or even encourage any student to pick up a Bible, much less to read one, and the Board has also expressly forbidden the private sponsors of the tables from imposing upon any student to take a Bible.  The Bibles are made available outside of the formal classroom setting and students will be able to ignore or simply walk past the table set up in

7

However, the Peck holding applied to secondary school students. The court specifically stated that as to elementary school students, the practice would be unconstitutional because of the heightened concerns regarding coercion. The court noted that:

> In elementary schools, the concerns animating the coercion principle are at their strongest because of the impressionability of young elementary-age children. Moreover, because children of these ages may be unable to fully recognize and appreciate the difference between government and private speech . . . the [School Board's] policy could more easily be (mis)perceived as endorsement rather than as neutrality.

Peck, 155 F.3d at 288.

As a result, the Court concludes that the practice undertaken by Loranger Middle School did violate the Establishment Clause. Jane Roe was, in fact, subjected to an

---

> the hall or library-presumably without even calling any attention to that choice. Thus, no student will be put to the choice of "participating [in a religious exercise], with all that implies, or protesting." Lee v. Weisman, 505 U.S. 577, 593 (1992). We recognize that some "possibility of student peer pressure remains, but there is little if any risk of official state endorsement or coercion where no formal classroom activities are involved and no school officials actively participate" (citing Mergens, 496 U.S. at 251).

Peck, 155 F.3d at 288.

unconstitutional element of coercion as she, an impressionable young elementary-age child, experienced pressure to support or participate in religion or its exercise, or otherwise act in a way which establishes religion.

### 2. **Lemon Test**

The same result follows under the Lemon test. As to the first prong, the Gideons were given access to the elementary school during school hours to distribute Bibles to fifth grade students. The School Board has failed to set forth a secular purpose for this practice, and in that absence, this Court determines that the distribution of Gideon Bibles is "unquestionably religious." See Berger, 982 F.2d 1160. As for prong two, allowing the Gideons to distribute Bibles under the circumstances in this case evidences a preference towards religion, specifically, Christianity. And as for prong three, the teachers who were required to inquire as to which students want the Bible, and then organize and direct them to the principal's office, became excessively entangled with religion.

### 3. **Endorsement Test**

The endorsement test also results in a finding of unconstitutionality for the reasons set forth above. The distribution of the Gideon Bibles was supported by the School Board, upon whose instruction the principal sent an email to the school's teachers to let the children know about the availability

of the Bibles outside of the principal's office.  Despite the principal's statement that the children did not have to take a Bible, by allowing the Gideons to set up immediately outside the principal's office, the School Board "created the impression in young, impressionable minds that 'the school endorsed a particular belief: Christianity.'"  See Jabr, at 664.

Therefore, this Court determines that the distribution of Bibles was ultimately coercive as Jane was pressured to accept a Bible in violation of Lee; that distribution of Bibles is a religious activity without a secular purpose in violation of Lemon; and that the distribution by the Gideons amounted to promotion of Christianity by the School Board in violation of County of Allegheny.  As a result, the distribution of Gideon Bibles to elementary school children at Loranger Middle School violated the First Amendment of the United States Constitution, specifically, the Establishment Clause.  Accordingly,

**IT IS ORDERED** that **Plaintiffs' Motion for Summary Judgment (Rec. Doc. 40)** is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' **Motion for Summary Judgment (Rec. Doc. 34)** is hereby **DENIED.**

New Orleans, Louisiana, this 22nd day of April, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE